## JOSEPH A. GANZKE
### *vs.*
## UNION & NEW HAVEN TRUST CO.

Superior Court          New Haven County          File No. 56155

MEMORANDUM FILED SEPTEMBER 21, 1939.

*John Henry Sheehan,* of New Haven, for the Plaintiff.

*Francis J. Moran,* of New Haven; *Martin E. Gormley,* of New Haven, for the Defendant.

DICKENSON, J.   The plaintiff was injured while attempting to leave the defendant's elevator by reason of the closing of the doors upon him.   After the hearing the court viewed the premises and saw the doors operated.   When the operator throws a switch the floor door and the elevator door start to close at the same time.   A reversal of the switch slows the closing doors and then returns them to the open position.   Once the switch is thrown to open, however, the floor door has a quicker impulse than the elevator door and carries half across the opening before it can be checked. The speed and weight of the doors are such as to make them capable of inflicting injury to one in

their path. When the switch is opened and reversed the operator may half retard the closing motion of the doors by holding them with his arm, but this requires considerable physical effort and mental alertness.

The plaintiff entered the elevator at the ground floor, the doors were closed and the elevator started to ascend. The plaintiff stated he wanted to go to the New York Life office which he mistakenly assumed was in the defendant's building. The elevator operator informed him of his mistake and continued to the top or eleventh floor without stopping, with the intention of letting the plaintiff off on his return to the first floor. On the way down the operator had a signal for a stop at the third floor and brought the elevator to a stop there. His testimony is that he called "Third floor" before he stopped.

Having stopped at the third floor the elevator operator opened the door and found his passenger to be a letter carrier. The letter carrier entered the elevator, the elevator man thrust his head out the door to see if any other passengers were in sight, withdrew it and threw over his lever. As he did the plaintiff attempted to step out. The operator, seeing this, thrust his right arm around the doors but not in time to stop them before the plaintiff was struck on his left side. The plaintiff continued or remained in the elevator and was taken to the first floor.

The testimony of the passenger and elevator operator is conflicting in some respects. While both refer to the request of the plaintiff to stop at the New York Life, the plaintiff states he attempted to alight at what he thought was the third or fifth floor on the way up. The operator's explanation is that he was on the way down and the plaintiff apparently thought he was at the main floor. The operator's story seems the more probable but suggests that he did not, as he claims he did, name the floor before he stopped.

As has been noted, the doors move swiftly and are capable of inflicting injury. The operator, after thrusting his head out the door, to see if passengers were coming, should have looked to see if any were leaving before operating his lever. He apparently assumed the plaintiff would know he was not at the ground floor and would not leave. There was nothing to indicate, in the elevator, at what floor the elevator was, although this floor was entirely different in appearance from the ground floor. In short, as to the operator, he assumed the plaintiff

would remain where he was when he should have looked to see that he had, and under all the circumstances failed to use the proper degree of care of his passenger.

As to the care of the passenger, bearing in mind that the elevator ran on a schedule of one minute up and one minute down, and there was no lost motion in its operations, he must have been near the door as he started to go out or else it would have closed and stopped his progress altogether, so swiftly does it operate. It does not appear that he saw or could see the operation of the switch and his only warning of danger would be the sight of the doors starting to close. It is fair to assume that they were wide open when he started to leave. The elevator itself is about five by six feet in size and it cannot be found that the plaintiff was careless under the circumstances.

While the defendant was not a common carrier as to its elevator, care required of it "is always to be proportionate to the hazards reasonably to be apprehended" (*Stratton vs. Newberry Co.*, 117 Conn. 522, 525), and passengers are entitled to expect such care and proceed accordingly.

The issues are found for the plaintiff. Upon the question of damages it appears much of the force of the blow was taken up by the operator's arm in checking the door. The evidence does not support a claim for continued or permanent injury. It does appear the plaintiff incurred a considerable medical bill and was inconvenienced for some time by an injury to his knee.

Judgment is directed for him to recover seven hundred and fifty dollars damages.